```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

DAVID NEWBOLD,                    )
                                  )
              Plaintiff,          )
                                  )
v.                                )    Case No. CIV-12-266-RAW-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
              Defendant.          )
```

### REPORT AND RECOMMENDATION

Plaintiff David Newbold (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 16, 1960 and was 50 years old at the time of the ALJ's decision. Claimant obtained his GED and attended college for three years without receiving a degree. Claimant has worked in the past as a farm laborer, butcher, window assembler, and air conditioning unit assembler. Claimant alleges an inability

to work beginning May 28, 2009 due to limitations resulting from back problems, degenerative disk disease, and spine and neck problems.

### Procedural History

On July 16, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 17, 2010, an administrative hearing was held before ALJ Trace Baldwin. On April 7, 2011, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on April 26, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of light work with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) engaging on a faulty credibility analysis; (2) failing to find Claimant's mental impairments as severe; (3) considering whether Claimant's conditions met a listing; and (4) failed to develop the record by ordering additional testing.

**Credibility Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of cervical/lumbar degenerative disease, status-post cervical diskectomy and fusion, and coronary artery disease with single vessel stenting. (Tr. 11). He also found Claimant retained the RFC to perform light work except that he could only occasionally stoop. (Tr. 12). After consultation with a vocational expert, the ALJ determined Claimant could perform the light, unskilled occupations of punch press operator and assembler. (Tr. 20).

Claimant contends that the ALJ failed to properly assess his credibility. The ALJ recited Claimant's testimony that he experiences memory problems, can stand for about 10 minutes at a time, has difficulty walking, suffers from depression, lays down once per day, and requires help getting out of the bathtub. He also testified he left his employment due to severe back pain, although he appears to have also stated at a different time that he

5

was laid off. (Tr. 13). The ALJ concluded with the boilerplate language that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id.

Initially, this Court agrees that the latter statement which is routinely set out in the ALJs' decisions does not accurately state the requirements for assessing a claimant's testimony. As this Court has stated in other recent opinions, the ALJ must first consider the testimony of a claimant as a part of the evidentiary record before arriving at a suitable RFC which must be supported by substantial evidence.

The ALJ, however, supports his findings on credibility by noting the significant number of physicians who concluded Claimant was exaggerating or malingering. (Tr. 19). Dr. Beth Jeffries in her examination noted Claimant refused to participate in the interview to a considerable degree. (Tr. 489). She also concluded Claimant suffered from depression, NOS, mild to moderate versus malingering. Id. Dr. Jeffries found Claimant to be exacerbating

6

his symptoms of depression. Claimant gave Dr. Jeffries misleading information regarding the reason his employment ended - at first claiming it was due to pain but changing his stance by stating it was due to a lay off. Dr. Jeffries found the misleading to be intentional leading her to the conclusion that Claimant was malingering. Although she found Claimant to have depression, she did not believe it was significant enough to interfere with his ability to perform socially or occupationally. (Tr. 490).

The ALJ made numerous references in his decision to instances where Claimant either lied to the examiner or misstated the true facts. These misrepresentations included his educational performance and being "paralyzed requiring a wheel chair for 7 months", which is not supported by the record. (Tr. 19).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or

7

other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's detailed assessment of Claimant's credibility is well-supported by the medical record. This case is unusual in the depth and extent of Claimant's untruthfulness or exaggeration. This Court would note to the ALJ that the referenced boilerplate language should not be employed in the future.

**Assessment of Severity of Mental Impairments**

Claimant first contends the ALJ improperly weighed the state agency physicians' opinions favorably based upon the use by the

physicians of a form which only allowed a finding of "mild" and "moderate" with nothing accounting for a condition between these two choices.  Claimant does not suggest what might be found between "mild" and "moderate" limitations.  The use of this type of form alone is not a sufficient basis for reversal nor is it a basis for the wholesale rejection of the opinions represented on the forms.

Claimant also suggests that the ALJ's finding that he suffered no episodes of decompensation is erroneous given that Claimant was hospitalized for psychiatric treatment on three occasions.  A claimant bears the burden at step two to present evidence that he has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 146 & n. 5 (1987). While the showing required is described as "de minimis," the claimant "must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (quotation omitted).

The ALJ's step two task is to determine, based on the record, whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  An impairment is "not severe if it does not significantly limit [a claimant's] ability to do basic work activities."  20 C.F.R. § 404.1521(a).

9

"Episodes of decompensation" is described by the regulations as

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.
>
> 1. The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ noted that Claimant was hospitalized for mental health treatment on three occasions (Tr. 16) - the first two instances occurred before his disability onset date and, therefore, will not be considered. *See* Barber v. Astrue, 2011 WL 3019106, 2 n.3 (10th Cir. (Okla.)). The third occasion resulted in a discharge noting

10

Claimant was "much improved." (Tr. 408). Claimant's single episode of decompensation after his alleged onset date was not of sufficient duration to qualify under the "B" criteria.

Continuing the scattered litany of error allegations set forth in Claimant's brief, Claimant states the ALJ should not have given the opinions of state agency physicians "substantial weight" when the law gives the opinions of treating physicians controlling weight. He does not, however, indicate which treating physicians should have been afforded increased weight and were not in the ALJ's decision. This omission makes addressing this argument impossible.

Claimant also contends the ALJ should have discussed his low GAF scores. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social

rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). This Court finds the ALJ was under no legal obligation to discuss Claimant's GAF scores or the "weight he assigned to them" as Claimant suggests.

Claimant also suggests in a sweeping argument that all of the evidence - low GAF scores, hospitalizations, and prescribed

12

medications - should cast some doubt upon the ALJ's conclusions regarding Claimant malingering. While Claimant clearly suffered from some mental health conditions, the presence of these conditions does not alter the fact that the testing physicians suspected malingering. The ALJ was not erroneous in noting these conclusions. Moreover, the overarching question which the ALJ was required to answer is whether these conditions constituted a severe impairment which limited Claimant's ability to engage in basic work activities. The ALJ was not in error in concluding that Claimant's mental health condition fell short of a severe impairment.

### Listing Analysis

Claimant also asserts the ALJ improperly addressed whether he qualified under a listing. The ALJ stated that Claimant did not meet the criteria for "listings 1.00 and 12.00." (Tr. 12). In the paragraph of the decision immediately preceding this statement, the ALJ references "adult mental disorders listings in 12.00 of the Listing of Impairments." It is apparent that the ALJ was addressing the generalized categories of listings contained under 1.00 (musculoskeletal system) and 12.00 (mental disorders) without setting forth each individual condition under these categories. Though somewhat unspecific, this is not reversible error.

Claimant also contends the ALJ should have specifically addressed mental retardation under Listing 12.05 based upon the

13

intellectual functioning testing done by Dr. Larry Vaught on January 6, 2011. (Tr. 691-94). Dr. Vaught found Claimant had a verbal IQ of 87, performance IQ of 69 and a full scale IQ of 77. (Tr. 693). Dr. Vaught also noted that "[t]here was considerable scatter in the profile." (Tr. 694). The ALJ rejected this testing, finding that prior statements by examiners that Claimant was exaggerating "does not inspire confidence in the results of the post-hearing formal tests." (Tr. 17). Exaggeration in other examinations does not necessarily affect the validity of Dr. Vaught's testing.

To meet or equal Listing 12.05C, a claimant must demonstrate the following:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>
> * * *

20 C.F.C. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

Claimant must satisfy all of these required elements for a

Listing to be met. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990). While Claimant's intellectual testing scores and other impairments appear to meet the criteria for this listing, the record is devoid of evidence of whether onset occurred before age 22. Claimant has failed to establish all elements of Listing 12.05.

**Obligation to Order Additional Testing**

Claimant contends the ALJ should have ordered additional testing if he believed the testing already obtained was invalid. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. <u>Branam v. Barnhart</u>, 385 F.3d 1268, 1271 (10th Cir. 2004) citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." <u>Id</u>. quoting <u>Henrie v. United States Dep't of Health & Human Services</u>, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." <u>Id</u>. quoting <u>Carter v. Chater</u>, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. <u>Baca v. Dept. of Health &</u>

Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

None of these criteria requires additional testing under the circumstances presented in this case. No error can be attributed to the failure to order an additional consultative examination.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 5th day of September, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE